# IN THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GMX RESOURCES INC., *et al.*[1] | ) | Case No. 13-11456 (SAH) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |

**APPLICATION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 330(a) AND 1103 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2014 AUTHORIZING THE EMPLOYMENT OF CONWAY MACKENZIE, INC. AS FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF <u>UNSECURED CREDITORS, EFFECTIVE AS OF APRIL 12, 2013</u>**

### NOTICE OF OPPORTUNITY FOR HEARING

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THIS DOCUMENT CAREFULLY AND CONSULT YOUR ATTORNEY ABOUT YOUR RIGHTS AND THE EFFECT OF THIS DOCUMENT.** IF YOU DO NOT WANT THE COURT TO GRANT THE REQUESTED RELIEF, OR YOU WISH TO HAVE YOUR VIEWS CONSIDERED, YOU MUST FILE A WRITTEN RESPONSE OR OBJECTION TO THE REQUESTED RELIEF WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF OKLAHOMA, 215 DEAN A. MCGEE AVENUE, OKLAHOMA CITY, OK 73102 NO LATER THAN **14 DAYS** FROM THE DATE OF FILING OF THIS REQUEST FOR RELIEF. YOU SHOULD ALSO SERVE A FILE-STAMPED COPY OF YOUR RESPONSE OR OBJECTION TO THE UNDERSIGNED MOVANT/MOVANT'S ATTORNEY [AND OTHERS WHO ARE REQUIRED TO BE SERVED] AND FILE A CERTIFICATE OF SERVICE WITH THE COURT. IF NO RESPONSE OR OBJECTION IS TIMELY FILED, THE COURT MAY GRANT THE REQUESTED RELIEF WITHOUT A HEARING OR FURTHER NOTICE.

**THE 14-DAY PERIOD INCLUDES THE THREE (3) DAYS ALLOWED FOR MAILING PROVIDED FOR IN BANKRUPTCY RULE 9006(F).**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, are: GMX Resources Inc. (4474), Diamond Blue Drilling Co. (7463), and Endeavor Pipeline, Inc. (3948). The location of GMX's corporate headquarters and the service address for its affiliates is 9400 N. Broadway, Suite 600, Oklahoma City, OK 73114.

The Official Committee of Unsecured Creditors (the "**Committee**") of GMX Resources Inc., *et al.* (collectively the "**Debtors**") for its Application (the "**Application**") Pursuant to Sections 330(a) and 1103 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") Authorizing the Employment of Conway MacKenzie, Inc. ("**CM**") as Financial Advisor to the Committee, effective as of April 12, 2013. In support of this Application, the Committee relies upon and incorporates the Declaration of John T. Young in Support of Application for Order Pursuant to Sections 330(a) and 504 of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure Authorizing the Employment of Conway MacKenzie, Inc. as Financial Advisor to the Committee Effective as of April 12, 2013 (the "**Young Declaration**"), attached hereto as <u>Exhibit A</u>. The Committee respectfully represents as follows:

## JURISDICTION

1. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Application is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## INTRODUCTION AND BACKGROUND

2. On April 1, 2013 (the "**Petition Date**"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are continuing to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed.

3. On April 2, 2013, the Office of the United States Trustee (the "**U.S. Trustee**") appointed the Committee. On April 9, 2013, the U.S. Trustee filed with this Court a Notice of Appointment of the Committee, as amended on April 29, 2013.

4. On April 12, 2013, the Committee decided to retain CM as its financial advisor. However, due to the change in Committee counsel that occurred between April 23 and 25, 2013 and the need to prepare for a contested DIP financing hearing on May 2, 2013, the Committee was unable to file this Application until now.

## RELIEF REQUESTED

5. By this Application, the Committee respectfully requests entry of an order authorizing the Committee's retention of CM as its financial advisor in these chapter 11 cases, pursuant to section 330(a) of the Bankruptcy Code, effective as of April 12, 2013.

6. An engagement letter between the Committee and CM, dated as of April 15, 2013 (the "**Engagement Letter**") is attached hereto as Exhibit B and incorporated herein by reference. The Engagement Letter describes (a) the various services that CM anticipates performing for the Committee in these chapter 11 cases (as described more fully herein) and (b) the terms and conditions of CM's proposed engagement by the Committee.

## CM'S QUALIFICATIONS

7. CM is a turnaround and crisis management consulting firm specializing in corporate restructurings, operations improvement, litigation analytics and valuations. CM has extensive experience working with and for distressed companies in complex financial and operational restructurings, both out-of-court and in chapter 11 proceedings throughout the United States. CM professional have advised debtors, creditors and equity constituents in numerous

reorganizations, which advisory services have included financial analysis and budgeting, forecasting, cash management, operational assessments and improvements, and the provision of interim management. CM has advised companies with annual sales ranging from $5 million to over $5 billion in a broad range of industries. In particular, CM has advised companies within the energy industry both inside and outside of the bankruptcy and restructuring context.

8. Since CM was founded in 1987, it has provided advisory services to a number of clients, including Bigler LP, Delta Petroleum Corporation, ISC Building Materials, KLN Steel Products Company, Lack's Stores, Inc., Marcus Oil & Chemical, Par Petroleum Corporation, The Sadler Clinic, TriDimension Energy, LP and Tri-Valley Corporation. In addition, prior to joining CM, CM's professionals provided restructuring and other advisory services in a number of chapter 11 cases including, but not limited to, Cooperheat-MQS, Inc./International Industrial Services, Inc., The Pacific Lumber Company/The Scotia Pacific Company, Winn-Dixie Stores and WorldCom.

9. In light of the size and complexity of these chapter 11 cases, the Committee requires the services of a seasoned and experienced financial advisor familiar with the energy industry to, among other things, assist the Committee in (i) understanding the Debtors' businesses and operations, (ii) executing its fiduciary duties and (iii) maximizing the value of the Debtors' estates. Therefore, the Committee respectfully submits that the services of CM are necessary and appropriate to ensure that the Committee's interests are protected.

## SERVICES TO BE PROVIDED

10. CM will render the following financial advisory services to the Committee pursuant to the Engagement Letter (collectively, the "**Financial Advisory Services**"):

(a) reviewing and monitoring of the asset sale process, including but not limited to an assessment of (i) the adequacy of the marketing process, (ii) completeness of any buyer lists and (iii) any bids received;

(b) reviewing financial information prepared by the Debtors;

(c) reviewing the Debtors' analysis of core and non-core business assets and the potential disposition or liquidation of the same;

(d) reviewing any tax issues associated with, but not limited to, claims/stock trading, preservation of net operating losses, refunds due to the Debtors, plans of reorganization and asset sales;

(e) reviewing and/or preparing information and analysis necessary for the confirmation of a plan and related disclosure statement in these chapter 11 proceedings;

(f) attending meetings and assisting in discussions with the Debtors, potential investors, banks, and other secured lenders, the Committee and any other official committees organized in these chapter 11 proceedings, the U.S. Trustee, other parties in interest and professionals hired by the same, as requested;

(g) reviewing financial disclosures required by the Court, including the Schedules of Assets and Liabilities, the Statement of Financial Affairs and Monthly Operating Reports;

(h) reviewing the Debtors' cost/benefit analysis with respect to the affirmation or rejection of various executor contracts and leases;

(i) evaluating and analyzing avoidance actions, including fraudulent conveyances and preferential transfers;

(j) assisting in the prosecution of Committee responses/objections to the Debtors' motions, including attendance at depositions and provision of expert reports/testimony on case issues as required by the Committee; and

(k) performing such other general business consulting services for the Committee that the Committee determines are necessary and appropriate to faithfully discharge its duties or otherwise relevant to these cases.

11. In light of CM's substantial experience in all of these areas, the Committee believes CM is well-qualified to perform these services and assist the Committee in these chapter 11 cases.

## PROFESSIONAL COMPENSATION

12. CM will bill on an hourly basis for services performed based on the actual number of hours worked at hourly rates ranging from $200.00 for paraprofessionals to $695.00 for senior managing directors. John T. Young, Jr., Senior Managing Director, will provide oversight and engagement management with a billing rate of $580.00 per hour. Seth Bullock, Managing Director, will be principally responsible for the engagement on a day-to-day basis, at a billing rate of $525.00 per hour. Fees will be billed monthly, together with out-of-pocket expenses incurred, in compliance with the bankruptcy court guidelines. In addition, CM will be entitled to an incentive bonus equal to 1% of recoveries after full satisfaction of the allowed secured debt obligations, allowed administrative claims and allowed priority claims of the Debtors. The incentive bonus is not to exceed $1.5 million.

13. This fee structure appropriately reflects the nature of the services to be provided by CM and is consistent with the fee structures typically utilized by middle market financial advisory firms. CM and the Committee also believe that the foregoing compensation arrangements are both reasonable and market-based.

14. Courts within the Tenth Circuit recognize the award of incentive bonuses or "success fees" to financial advisors upon a successful restructuring. *See In re Commercial Fin. Servs., Inc.*, 427 F.3d 804, 808 n.3 (10th Cir. 2005) (defining "success fee"); *In re Gillett Holdings, Inc.*, 137 B.R. 452, 459 (Bankr. D. Colo. 1991). A court may award such a fee upon a showing of entitlement, whether by exceptional performance, an unexpected benefit conferred

upon creditors of the estate, or an unusually effective reorganization. *Gillett*, 137 B.R. at 459. Because the "success" element is speculative at the time the employment application is filed, courts should defer their evaluation of whether a success fee is appropriate until the financial advisors have performed all work. *Id.* at 459–60. At that time, a court may apply the reasonableness standard under section 330(a) to determine whether such an award is warranted. *See id.*

15. CM intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable procedures and orders of the Court and consistent with the proposed compensation set forth in the Engagement Letter.

16. CM will maintain records in support of any actual and necessary costs and expenses incurred in connection with the rendering of its services in these cases. However, CM has indicated to the Committee that it is not the general practice of financial advisory firms to keep detailed time records similar to those customarily kept by attorneys. Rather, CM professionals typically keep time records in half-hour increments describing their daily activities and the identity of persons who performed such tasks. The Committee has been advised that to have CM professionals record their time as prescribed by the Local Rules would be unduly burdensome and time consuming. Therefore, the Committee respectfully requests that CM be permitted to submit its time records during the course of these cases setting forth a description of the services rendered by each CM professional in half-hour increments.

17. As set forth in the Young declaration, CM has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

## INDEMNIFICATION

18. The Engagement Letter provides that the Debtors will indemnify, hold harmless and pay the out-of-pocket expenses of CM and its affiliates and their directors, officers, partners, shareholders, agents, employees or controlling persons (collectively, the "**Indemnified Persons**") under certain circumstances, as described more specifically in Schedule 1 to the Engagement Letter (the "**Indemnification Provisions**").

19. Financial advisors seek indemnification for a variety of reasons. The performance of CM's responsibilities requires the exercise of professional judgment regarding difficult business and financial issues, as to which many persons may have diverse financial interests. CM intends to rely on the accuracy and completeness of the financial information and other information to be provided by the Debtors and the Committee. CM may also be involved in negotiations and transactions in which the Debtors and/or the Committee direct that certain actions be taken. CM therefore seeks indemnification for liabilities and losses that arise out CM's engagement or provision of the Financial Advisory Services referred to in this Application and the Engagement Letter. However, in the event an Indemnified Person acts with gross negligence or willful misconduct, the estate will be entitled to recover amounts paid pursuant to the Indemnification Provisions.

20. The Committee and CM believe that the proposed Indemnification Provisions are customary and reasonable for financial advisory engagements, both out-of-court and in chapter 11 proceedings. Similar indemnification arrangements have been approved and implemented in

other large chapter 11 cases. *See, e.g.*, *In re Pilgrim's Pride Corporation, et al.*, Case No. 08-45664 (Bankr. N.D. Tex. Jan. 9, 2009); *In re New Century TRS Holdings, Inc.*, Case No. 07-10416 (Bankr. D. Del. April 26, 2007); *In re Foamex Int'l, Inc.*, Case No. 05-12685 (PJW) (Bankr. D. Del. Oct. 15, 2005); *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); *In re Joan & David Halpern, Inc.*, 248 B.R. 43 (Bankr. S.D.N.Y. 2000), *aff'd*, 200 WL 1800690 (S.D.N.Y. Dec. 6, 2000).[2]

21.     The proposed Indemnification Provisions are also consistent with the standards that normally govern trustees and committees in chapter 11 cases. *See Sherr v. Winkler*, 552 F.2d 1367, 1375 (10th Cir. 1977) (holding that a trustee is "(a) not liable, in any manner, for mistake in judgment where discretion is allowed, (b) liable personally only for acts determined to be willful and deliberate in violation of his duties and (c) liable, in his official capacity, for acts of negligence."); *In re Chicago Pacific Corp.*, 773 F.2d 909, 915 (7th Cir. 1985) (bankruptcy trustee can be personally liable only "for a willful and deliberate violation of his fiduciary duties"); *In re Hutchinson*, 5 F.3d 750, 752–53 (4th Cir. 1993) (collecting cases). Members of creditors' committees are also protected from liability in the absence of gross negligence. *In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000). In fact, the Third Circuit has held that professional employed by creditors' committees similarly should be protected from liability in the absence of gross negligence. *Id.*

22.     For these reasons, indemnification agreements are common market practice, both inside and outside of bankruptcy cases, and it is the standard practice for firms like CM to obtain indemnities of the kind outlined in the Engagement Letter.

---

[2] Indeed, Jefferies has requested a similar indemnity agreement in its application to be retained as the Debtors' financial advisor.

23. For the foregoing reasons, the Committee submits that the proposed indemnification provisions are appropriate and should be approved.

### CONNECTIONS OF PROFESSIONALS

24. The Young Declaration and Schedule 2 thereto set forth all of CM's known connections with parties in interest in these cases in unrelated matters. CM does not provide financial advisory services to any party in these cases other than the Committee and will not provide such services to any constituent in these cases other than the Committee.

### PREPETITION PAYMENTS

25. CM has not received any payments for professional services rendered or to be rendered in contemplation or in connection with these cases.

### NOTICE

26. A copy of this Application has been served on: (a) the United States Trustee, (b) counsel to the Debtors, and (c) all parties that have requested special notice in this case. The Committee submits that no other or further notice is required.

### NO PREVIOUS REQUEST

27. No previous request for the relief sought in this Application has been made to this Court or any other court.

### Remainder of page intentionally left blank ###

**WHEREFORE**, the Committee respectfully requests that this Court enter an order (i) pursuant to section 1103 of the Bankruptcy Code authorizing the Committee's retention of CM as financial advisor on the terms set forth herein, effective as of April 12, 2013, and (ii) granting such other and further relief as may be deemed just and proper.

Respectfully submitted this 10th day of May, 2013.

**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**

By: */s/ Bonnie N. Hackler*
Steven W. Soulé, OBA No. 13781
Bonnie N. Hackler, OBA No. 18392
320 South Boston Avenue, Suite 200
Tulsa, Oklahoma 74103-3706
Telephone: (918) 594-0400
Facsimile: (918) 594-0505
Email: ssoule@hallestill.com
bhackler@hallestill.com

-and-

**LOOPER REED & McGRAW P.C.**

By: */s/ Jason S. Brookner*
Jason S. Brookner, Texas Bar No. 24033684
Micheal W. Bishop, Texas Bar No. 02354860
Lydia R. Webb, Texas Bar No. 24083758
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@lrmlaw.com

**[PROPOSED] ATTORNEYS FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**