**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GMX RESOURCES INC., *et al.*[1] | ) | Case No. 13-11456(SAH) |
| | ) | |
| Debtors. | ) | Jointly Administered |

| | | |
|---|---|---|
| JOHN P. MADDEN, in his capacity as Trustee of the GMX Resources Creditor Trust, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary No. _____ |
| v. | ) | |
| | ) | |
| CAROLYN CHICHESTER, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**

John P. Madden, in his capacity as trustee ("Trustee") of the GMX Resources Creditor Trust (the "Creditor Trust"), for his complaint against NFS/FMTC IRA - FBO Carolyn Chichester (the "Defendant"), alleges upon information and belief, as follows:

**SUMMARY OF ACTION**

1. This action seeks to recover constructively fraudulent transfers in the form of dividends paid by GMX Resources, Inc. ("GMX" or the "Company") to preferred shareholders during 2010, 2011 and 2012 (the "Relevant Time Period"). During the Relevant Time Period and at the times the dividends were paid, the Company was insolvent, or became insolvent as a result

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, include: GMX Resources Inc. (4474), Diamond Blue Drilling Co. (7463), Endeavor Pipeline, Inc. (3948). The location of GMX's corporate headquarters and the service address for its affiliates is: 9400 N. Broadway, Suite 600, Oklahoma City, OK 73114.

COMPLAINT – PAGE 1
2572398.1

of paying the dividends, and did not receive reasonably equivalent value in exchange for the dividends.

## JURISDICTION AND VENUE

2. The United States Bankruptcy Court for the Western District of Oklahoma (the "Court" or the "Bankruptcy Court") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b) and (e).

3. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (H) and (O). To the extent this proceeding is determined to be non-core, the Trustee consents to entry of a final order or judgment by this Court.

4. Venue for this matter is proper in this district pursuant to 28 U.S.C. § 1409.

## THE PARTIES

5. The Trustee is a successor to GMX, and has standing and authority to bring this action pursuant to the *First Amended Plan of Reorganization of GMX Resources Inc. and its Debtor Subsidiaries Under Chapter 11 of the Bankruptcy Code* (the "Plan"), which established the Creditor Trust and appointed the Trustee. The Plan was confirmed by order of the Bankruptcy Court on January 22, 2014 [Docket No. 1033] (the "Confirmation Order"). The Plan is attached as an exhibit to the Confirmation Order, *see* Docket No. 1033, and became effective on February 3, 2014 (the "Effective Date"). *See* Docket No. 1063.

6. The Trustee also has standing and authority to bring this action pursuant to the GMX Resources Creditor Trust Agreement (the "Trust Agreement"), filed with the Bankruptcy Court on February 5, 2014, which is incorporated by and into the Plan. *See* Docket No. 1062. The claims and causes of action asserted herein (the "Causes of Action") constitute assets of the Creditor Trust. *See* Trust Agreement Exhibit A.

7. The Trustee further has standing and authority to bring this action pursuant to 11 U.S.C. § 544(a) and 548(a)(1).

8. Defendant Carolyn Chichester ("Chichester") is an individual who may be served with process at 12385 N. Pumpkin Hollow Rd., Proctor, OK 74457. As of the time GMX paid its last preferred dividend in December 2012, Chichester held 4,000 shares of Preferred Stock (defined below).

## FACTUAL ALLEGATIONS

9. On March 11, 2010, GMX restated its financial statements for the year ended 2008 and calendar quarters ended March 31, June 30 and September 30, 2009. Among other things, as contained in various public filings made in March 2010, the restatement was a result of a failure of internal controls, the Company's computation of diluted loss per share for the relevant time periods being incorrect, and financial results having not been prepared in accordance with generally accepted accounting principles ("GAAP").

10. In 2010, the Company sustained operating losses for the third straight year, in an amount exceeding $141 million. Aggregated together, the Company's operating losses in 2008, 2009 and 2010 exceed $446 million.

11. Even though the Company's financial statements for year-end 2010 reflected equity of $116.42 million, the Company was nevertheless insolvent as a result of, among other things, the following:

    (a) The Company did not have sufficient working capital to pay its debts as they became due;

    (b) The Company's proved oil and gas reserves were not worth the long-term debt that the Company incurred to develop those reserves. Although the GAAP book value of its oil and gas properties, calculated under the full cost method, was $347.8 million, the total PV-10 values of proved reserves – calculated as required under SEC rules – was only $249.9 million as of year-end 2010. This

    $249.9 million was substantially less than the historical investment made by GMX, minus impairments, and the PV-10 reported values for those reserves was at least $35 million less than GMX's $284.943 million in long-term debt (less current maturities), as reported in the Company's 2010 SEC Form10-K; and

  (c) The Company's oil and gas assets were worth less than its liabilities. The Company's total PV-10 value of its proved reserves exceeded the fair value of such reserves because, as reported in a March 1, 2012 press release, only 34% of GMX's proved Haynesville/Bossier Shale reserved as of year-end 2010 were proved and developed, thus leaving 66% in the proved undeveloped ("PUD") category. Under recognized industry standards, the fair value of GMX's PUDs would only represent 50%, at most, of the PV-10 calculations. After application of various risk factors, as of year-end 2010, the Company's proved reserves were less than $200 million. When this fair value is considered, less impairment charges, the Company's total assets in 2010 were less than $359 million, as compared to the Company's almost $369 million in liabilities.

  12. Despite suffering these heavy operating losses from 2008 through 2010, and despite being unable to pay its debts as they became due, in early 2011 GMX made the "strategic decision" to shift the focus of its operations from basins and formations in its traditional "core area" of East Texas to basins and formations outside of its "core area." According to the Company's 2011 Form 10-K (the "2011 10-K"), the purpose behind the decision to shift its focus was to "diversify [the] Company's concentrated natural gas focus from two resource plays in one basin and provide the company more liquid hydrocarbon opportunities."

  13. In furtherance of its "strategic decision," the Company completed acquisitions of over 75,000 acres of undeveloped land in the Williston Basin of North Dakota and Montana in early 2011.

  14. In order to fund operations, including the capital development of its assets, during 2011, GMX received $25.8 million in connection with the issuance of an additional 1,135,565 shares of Preferred Stock. Although the funds raised by this stock issuance, combined with over $105 million raised in connection with the issuance of additional shares of new common stock,

temporarily provided additional cash to the Company, the Company still had a severe liquidity crisis fueled by its continued operating losses and the capital expenditures required to develop its assets. In fact, the acquisitions under the "strategic decision" required a cash outlay for capital expenditures during 2011 of $272 million, of which $124 million was slated for capital expenditures for drilling operations.

15. The Company's losses continued throughout 2011, and for the nine (9) months ending September 30, 2011, GMX reported in excess of $138 million in net losses. By year-end 2011, the Company reported another $211 million in net losses.

16. Although the Company announced its decision to focus entirely on the acreage acquired in 2011 under its "strategic decision," the Company's losses continued to mount throughout 2012 and the Company's insolvency deepened even further. For example, by the end of March 2012, the Company's working capital deficit was in excess of $38 million. By the end of September 2012, the Company's working capital deficit had increased to in excess of $48 million.

17. Despite the Company's insolvency in 2010, 2011 and 2012, GMX nevertheless paid dividends to holders of Preferred Stock in such years in the aggregate amounts of approximately $4.625 million, $6.70 million and $7.35 million, respectively. This represents a dividend payment of $0.578 per share of Preferred Stock per calendar quarter in each of calendar years 2010, 2011 and 2012.

18. On April 1, 2013 (the "Petition Date"), GMX, along with two affiliated entities, filed petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the Bankruptcy Court.

19. As of the Petition Date, there were outstanding approximately 3.1 million shares of GMX 9.25% Series B Cumulative Preferred Stock with a dividend preference of $2.3125 per share per year and a liquidation preference entitling the holders thereof to receive $25 stated value per share (the "Preferred Stock").

20. As a holder of shares of Preferred Stock, Defendant was paid $0.578 per share for each calendar quarter during which Defendant held shares of Preferred Stock.

**FIRST CAUSE OF ACTION**
[Avoidance and Recovery of Constructively Fraudulent Transfers
Under 11 U.S.C. §§ 548(a)(1) and 550]

21. The Trustee realleges and incorporates by reference the allegations of paragraphs 1 through 20 as if fully set forth herein.

22. GMX's payment of Preferred Stock dividends to Defendant from April 1, 2011 through the Petition Date were "transfers" of an interest of the Company in property (the "548 Transfers"), as defined in section 101(54) of the Bankruptcy Code.

23. The 548 Transfers were made on or within two (2) years before the Petition Date.

24. GMX received less than a reasonably equivalent value in exchange for the 548 Transfers.

25. GMX was insolvent on the dates the 548 Transfers were made, or became insolvent as a result of the 548 Transfers.

26. In the alternative, GMX was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with GMX was an unreasonably small capital.

27. Defendant was an initial transferee of the 548 Transfers or the entity for whose benefit the 548 Transfers were made.

28. In the alternative, Defendant was an immediate or mediate transferee of the initial transferee of one or more of the 548 Transfers.

29. The two-year statute of limitations contained in section 546(a)(1) of the Bankruptcy Code is applicable herein. This action is, therefore, timely.

30. As a result, pursuant to sections 548(a) and 550 of the Bankruptcy Code, the 548 Transfers constitute avoidable fraudulent transfers. The Trustee, as a successor to GMX, is entitled to a judgment avoiding the 548 Transfers, and recovering the 548 Transfers, if any, or the value of the 548 Transfers, from the Defendant for the benefit of the Creditor Trust.

### SECOND CAUSE OF ACTION
[Avoidance and Recovery of Fraudulent Transfers
Under Oklahoma Uniform Fraudulent Transfer Act]

31. The Trustee realleges and incorporates by reference the allegations of paragraphs 1 through 30 as if fully set forth herein.

32. Pursuant to section 544(b)(1) of the Bankruptcy Code, with respect to the Causes of Action, the Trustee may avoid any transfer of an interest of GMX in property that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of the Bankruptcy Code.

33. As of the Petition Date, there were creditors holding tens of millions of dollars of unsecured claims against GMX that were allowable under section 502 of the Bankruptcy Code. Such creditors include, but are not limited to (i) the holders of approximately $48 million in unsecured 4.5% convertible senior notes due May 2015, and (ii) the holders of approximately $2 million in unsecured 11.375% senior notes due March 2018.

34. Moreover, prior to the time the State Law Transfers (defined below) were made, there were creditors in existence holding claims against GMX including, but not limited to, holders

of the original issuance of approximately $86 million in unsecured 4.5% convertible senior notes due in 2015.

35. Chapter 7 of Title 24 of the Oklahoma Statutes, 24 Okla. Stat. §§ 112-123, known as the Oklahoma Uniform Fraudulent Transfer Act (the "Oklahoma UFTA"), 24 Okla. Stat. § 112, is applicable herein by virtue of section 544(b) of the Bankruptcy Code.

36. GMX's payment of Preferred Stock dividends, if any, to Defendant from January 1, 2010 through March 31, 2011 were "transfers" (the "State Law Transfers"), as defined in section 113 of the Oklahoma UFTA.

37. Pursuant to section 116(A)(2) of the Oklahoma UFTA, the State Law Transfers are fraudulent as to a creditor, whether the creditor's claim arose before or after the State Law Transfers were made, if GMX made the State Law Transfers without receiving a reasonably equivalent value in exchange for the transfers and GMX (a) was engaged or was about to engage in a business or a transaction for which the remaining assets of GMX were unreasonably small in relation to the business or transaction or (b) GMX intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

38. GMX in fact made the State Law Transfers without receiving a reasonably equivalent value in exchange for such transfers, and GMX (a) was engaged or was about to engage in a business or a transaction for which the remaining assets of GMX were unreasonably small in relation to the business or transaction or (b) GMX intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

39. Pursuant to section 117(A) of the Oklahoma UFTA, the State Law Transfers are fraudulent as to a creditor whose claim arose before such transfers were made if GMX made the State Law Transfers without receiving a reasonably equivalent value in exchange for such transfers

and GMX was insolvent at the time the State Law Transfers were made or became insolvent as a result of the State Law Transfers.

40. GMX in fact made the State Law Transfers without receiving a reasonably equivalent value in exchange for such transfers and GMX was insolvent at the time the State Law Transfers were made or became insolvent as a result of the State Law Transfers.

41. Pursuant to section 121 of the Oklahoma UFTA, the statute of limitations to recover a transfer subject to the provisions of the Oklahoma UFTA is four (4) years after the transfer was made (the "Oklahoma SOL"), subject to the tolling provisions of section 108 of the Bankruptcy Code.

42. The State Law Transfers were made within four (4) years of the Petition Date.

43. Pursuant to section 108(a) of the Bankruptcy Code, because the Oklahoma SOL had not expired as of the Petition Date, the time to bring an action to recover the State Law Transfers was extended until two (2) years after the Petition Date. In addition, the two-year statute of limitations contained in section 546(a)(1) of the Bankruptcy Code is applicable herein. This action is, therefore, timely.

44. Pursuant to section 120 of the Oklahoma UFTA, the Trustee may recover judgment against the Defendant in the amount of the State Law Transfers, if any, as the Defendant was the first transferee or subsequent transferee of one or more of the State Law Transfers.

45. As a result, the State Law Transfers constitute avoidable fraudulent transfers under the Oklahoma UFTA. The Trustee, as a successor to GMX, is entitled to a judgment pursuant to sections 119 and 120(B) of the Oklahoma UFTA avoiding the State Law Transfers, and recovering the value of the State Law Transfers, if any.

46. Further, pursuant to section 550(a) of the Bankruptcy Code, the Trustee may also recover the State Law Transfers (if any), or the value of such property, from the Defendant for the benefit of the Creditor Trust.

### THIRD CAUSE OF ACTION
[Attorneys' Fees]

47. The Trustee realleges and incorporates by reference the allegations of paragraphs 1 through 46 as if fully set forth herein.

48. Pursuant to section 122 of the Oklahoma UFTA, and general principles of law and equity, the Trustee hereby requests recovery his attorneys' fees and costs incurred in connection with this Adversary Proceeding.

### RESERVATION OF RIGHTS

49. The Trustee specifically reserves the right to bring any and all other causes of action that he may maintain against the Defendant including, without limitation, causes of action arising out of the same transactions set forth in this Complaint, to the extent discovery in this action or further investigation by the Trustee reveals the existence of such further causes of action.

**WHEREFORE**, Trustee respectfully requests that the Court (i) enter judgment in favor of the Trustee pursuant to 11 U.S.C. §§ 544(b)(1), 548(a) and 550, and the Oklahoma UFTA, avoiding, preserving and recovering the 548 Transfers and the State Law Transfers, if any, for the benefit of the Creditor Trust, as a successor to GMX, together with all other interest, costs and attorneys' fees in respect of the obligations avoided hereunder, and (ii) grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 27th day of March, 2015.

**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**

By: */s/ Jennifer Heald Castillo*
Larry G. Ball, OBA #12205
Jennifer Heald Castillo, OBA #19504
100 N. Broadway, Suite 2900
Oklahoma City, Oklahoma 73102
Telephone: (405) 553-2828
Facsimile: (405) 553-2855
Email: lball@hallestill.com
jcastillo@hallestill.com

-And-

**GRAY REED & McGRAW P.C.**

By: */s/ Jason S. Brookner*
Jason S. Brookner, Texas Bar No. 24033684
Lydia R. Webb, Texas Bar No. 24083758
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@grayreed.com
lwebb@grayreed.com

**ATTORNEYS FOR JOHN P. MADDEN, TRUSTEE OF THE GMX RESOURCES CREDITOR TRUST**